C:\Case Files\Barnes\Jury-selection\Jury-selection-supplemental memorandum 02-06-2008.wpd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

04-Cr.-00186(S9)(SCR)

UNITED STATES OF AMERICA,

Plaintiff,

– versus –

KHALID BARNES

Defendant.

Before:  Hon. Stephen C. Robinson, U.S.D.J.

DEFENDANT KHALID BARNES' SUPPLEMENTAL MEMORANDUM
CONCERNING JURY *VOIR DIRE*

JOSHUA L. DRATEL, ESQUIRE
Joshua L. Dratel, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
(212)732-0707
(212)571-3792(fax)
jdratel@joshuadratel.com

DAVID A. RUHNKE, ESQUIRE
Ruhnke & Barrett
47 Park Street, Second Floor
Montclair, New Jersey 07042
(973)744-1000
(973)746-1490 (fax)
dr@ruhnkeandbarrett.com

– Attorneys for Khalid Barnes –

## STATEMENT OF THE CASE

This supplemental memorandum is submitted on behalf of the defendant, Khalid Barnes, outlining proposed *voir dire* in the areas of general follow-up questions, as well as proposed questions dealing with race, police credibility, the presumption of innocence and lawyers.

FOR THE REASONS WHICH FOLLOW, DEFENDANT KHALID BARNES RESPECTFULLY REQUESTS THAT THE COURT POSE THE FOLLOWING QUESTIONS TO JURORS APPEARING FOR INDIVIDUAL *VOIR DIRE*.

**A.     Introduction – general questions to individual jurors**

1.   Since you were here last, have you read, seen, or heard anything at all about this case?

2.   Have you done any kind of research, internet or otherwise, about this case or the people involved?

3.   Since you were here last, has anyone spoken to you about this case? Including anything said to you by your fellow prospective jurors?

4.   Have you spoken with anyone about the case? Including anything said by you to any of your fellow prospective jurors?

5.   Have you overheard any discussions about this case? Including any discussions about the case among your fellow prospective jurors?

6.   Are there any answers you provided on the questionnaire which, thinking about it, you wish to change?

7.   Regarding your ability to serve as a fair and impartial juror in this case, do you have any doubts whatsoever about that? If so, now is the time to let us know.

**B.     Questions regarding race**

On the draft defense jury questionnaire, Mr. Barnes had proposed several questions dealing with race and racial bias. The government did not object to the questions. Nonetheless, the Court removed all questions on the issue of race from the questionnaire. Mr. Barnes is African-American. One of the alleged victims in this case, Demond Vaughn, was also African-American. The second victim, Sergio Santana, was Hispanic. Specifically, the defense had proposed the following questions:

2

70. Would the fact that the defendants are African-American cause you to doubt your ability to serve fairly in this case?

    ❏ YES    ❏ NO

71. Do you believe that African-Americans are more likely to be involved in criminal activity, including drug-dealing, than other racial groups?

    ❏ YES    ❏ NO

72. Is your neighborhood pretty much made up of all one racial group?

    ❏ YES    ❏ NO

    If yes, what is the predominant group? _____

    If no, what is the approximate racial make-up of your neighborhood?

    _____

73. Have you ever had an unpleasant encounter with someone from a racial group different from your own?

    ❏ YES    ❏ NO    If yes, please explain:

    _____

(Document 304-2, filed 11/19/2007, at p. 15.) After receiving the Court's proposed questionnaire, Mr. Barnes requested that the race questions be restored to the questionnaire. (A copy of that e-mail request is appended as Attachment A.)

In prior submissions, the defense has attempted to describe in some detail the historic correlation between capital punishment and racial prejudice.[1] The defense also brought a

---

[1] The defense cited, among others, the following scholarly sources: R. K. Little, "What Federal Prosecutors Really Think: The Puzzle of Statistical Race Disparity Versus Specific Guilt, and the Specter of Timothy McVeigh," 53 DEPAUL L. REV. 1591 (2004); K. McNally, "Race and the Federal Death Penalty: A Nonexistent Problem Gets Worse," 53 DEPAUL L. REV. 1615 (2004); C. J. Ogeltree, "Black Man's Burden: Race and the Death Penalty in America," 81 OREGON L.REV. 15 (2002); G. L. Pierce, M. L. Radlet, "Race, Region, and

challenge to the under-representation of minority groups on the jury panels that are selected for trials at the White Plains courthouse. We are now at the point where the issue becomes particularly meaningful and intensely practical, *i.e.*, are there potential jurors among those who will be appearing for *voir dire* who harbor racial animus towards African-Americans.[2] The problem is compounded by the reality that racial prejudice is not a character trait that a potential juror would be particularly anxious to reveal, thus generalized "can-you-be-fair" inquires are too easily deflected to get at underlying racial bias.

In *Ristaino v. Ross*, 424 U.S. 589, 597 n. 9, 598 n. 10 (1976), the Court noted that "some cases may present circumstances in which an impermissible threat to the fair trial guaranteed by due process is posed by a trial court's refusal to question jurors specifically about racial prejudice during *voir dire*." *Id.*, at 595, *citing Ham v. South Carolina*, 409 U.S. 524 (1973). In *United States v. Barnes*, 604 F.2d 121, 137 (2d Cir. 1979), the Court quoted

---

Death Sentencing in Illinois," 81 OREGON L.REV. 39 (2002); S. Bright, "Discrimination, Death and Denial: The Tolerance of Racial Discrimination in the Infliction of the Death Penalty," 35 SANTA CLARA L.REV. 433 (1995); D. Baldus, "Reflections on the 'Inevitability' of Racial Discrimination in Capital Sentencing and the 'Impossibility' of its Prevention, Detection and Correction," 51 WASH. & LEE L.REV. 359 (1994); Bienen, Weiner, Denno, Allison and Mills, "The Reimposition of Capital Punishment in New Jersey: The Role of Prosecutorial Discretion," 41 RUTGERS L.REV. 27, 100-57 (1988).

[2]The jury-consultant retained by the defense in this case, Julie Howe, Ph.D., recently concluded jury-selection in a federal capital case in Brooklyn, *United Stats v. McTier*. Of the 218 jurors interviewed, five stated on their jury questionnaire that they held "personal views towards any racial or ethnic group that wold affect their ability to judge a member of that group fairly and impartially." Among the same 218 jurors, 29 believed that "persons of a particular ethnic group or race tend to be more violent." These are not theoretical issues or concerns.

from *United States v. Robinson*, 475 F.2d 376, 380-81 (D.C. Cir. 1973), with respect to the sensitivity trial courts must exercise during voir dire regarding areas of potential prejudice:

> [t]he defense must be given a full and fair opportunity to expose bias or prejudice on the part of the veniremen. . . . The possibility of prejudice is real, and there is consequent need for a searching voir dire examination, in situations where, for example, the case carries racial overtones, or involves other matters concerning which either the local community or the population at large is commonly known to harbor strong feelings that may stop short of presumptive bias in law yet significantly skew deliberations in fact. In a case involving such sentiment, the trial court must take it into account and govern the *voir dire* accordingly.

604 F.2d at 139 (emphasis added) (footnotes and citations omitted).

In addition to the Sixth Amendment, federal courts can exercise their supervisory power to ensure that voir dire is sufficient to impanel an impartial jury. *See Aldridge v. United States*, 283 U.S. 308, 313 (1931) (citations omitted) ("[t]he right to examine jurors on the voir dire as to the existence of a disqualifying state of mind has been upheld with respect to other races than the black race, and in relation to religious and other prejudices of a serious character"). In *Aldridge*, the Court was faced with an argument by the government that allowing *voir dire* questions about race and racial prejudice would be "detrimental" to the federal criminal justice system. The Court answered that argument as follows:

> We think that it would be far more injurious to permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred. No surer way could be devised to bring the process of justice into disrepute.

283 U.S. at 315.

5

In capital cases, the capacity for racial prejudice to creep into the process is great. In *Turner v. Murray*, 476 U.S. 28 (1986),[3] the Court underscored this potential for bias as follows:

> Because of the range of discretion entrusted to a jury in a capital sentencing hearing, there is a unique opportunity for racial prejudice to operate but remain undetected. On the facts of this case, a juror who believes that blacks are violence prone or morally inferior might well be influenced by that belief in deciding whether petitioner's crime involved the aggravating factors specified under Virginia law. Such a juror might also be less favorably inclined toward petitioner's evidence of mental disturbance as a mitigating circumstance. More subtle, less consciously held racial attitudes could also influence a juror's decision in this case. Fear of blacks, which could easily be stirred up by the violent facts of petitioner's crime, might incline a juror to favor the death penalty.

476 U.S. at 35-36.

Mr. Barnes, through his counsel, proposes the following with regard to ferreting out racial bias: (1) the Court should administer a one-page supplemental questionnaire to jurors appearing for individual *voir dire*.[4] (A proposed supplemental questionnaire is set forth as Attachment B to this memo.) It is highly realistic to assume that some members of the potential jury panel harbor racial prejudice directed at African-Americans. There is, of

---

[3]The precise holding of *Turner v. Murray* was that in a capital case alleging inter-racial murder a defendant is constitutionally entitled to a *voir dire* that is sufficient to root out racial bias. This is a case of inter-racial murder.

[4]If the Court denies the application for a supplemental questionnaire, Mr. Barnes requests that the questions set forth in the proposed supplemental questionnaire be posed to the prospective jurors by the Court during individual *voir dire*.

course, no guarantee that any such juror will be honest in revealing that prejudice. However, having the opportunity to express such views in the relative "privacy" of a questionnaire (as distinct from an inquiry made in open court) will maximize the possibility of such prejudice being revealed. Mr. Barnes is entitled to such a question asked in a questionnaire format. In addition, the Court itself should inquire of jurors regarding racial bias. That inquiry should be undertaken in a manner that allows a juror to reveal racial bias openly. A question such as the following is proposed:

> I want to ask you a question that may be difficult and uncomfortable. Specifically, I want to ask about race and the potential for racial bias in this case. Mr. Barnes is African-American. Understanding that there are no right or wrong answers to my questions, is there anything at all about Mr. Barnes' race that might affect how you think about this case if selected as a juror?

If the Court does not follow the proposal for a supplemental questionnaire, it is also requested that the Court inquire as follows of jurors in open court:

> The defendant in this case is African-American. People have varying opinions based on their backgrounds and different experiences. And that's normal. With that in mind, I'd like you to answer the following questions:
>
> 1. Have you had any positive or negative experience with anyone of African-American descent?
>
> 2. Do you hold any beliefs that African Americans are more likely to be involved in criminal activity than other racial groups?
>
> 3. Does the fact that the defendant is African American create any concerns for you or cause you to doubt your ability to serve?

The above measures are reasonable and necessary to avoid having Mr. Barnes' jury consist of one or more members who harbor racial prejudice.

B.  **Law enforcement bias**

In the course of jury-selection, it is not uncommon to encounter jurors who tend to believe that police officers – simply because of that status – are more likely to be credible than other categories of witnesses. The defense had proposed placing a question on the questionnaire designed to identify jurors who potentially had a disqualifying bias in favor of law enforcement witnesses. That question was removed by the Court and efforts to have it restored were not successful. The government had not objected to the question. The defense requests that the Court inquire of all potential jurors as follows:

> As a general proposition, do you tend to believe that a member of law enforcement, such as a police officer or federal agent, who testifies in court is: (1) More likely to tell the truth than other witnesses; (2) about as likely to tell the truth as other witnesses; or (3) less likely to tell the truth than other witnesses?

The 3500 material provided by the government suggests that the government's case will be dominated by the testimony of law-enforcement officials. Mr. Barnes is entitled to know whether, going in, those witnesses have an unfair and improper credibility edge.

C.  **Opinion of lawyers**

Many people do not like or trust lawyers. Experience from having a question regarding lawyers on the questionnaire from other cases teaches that a juror's views about lawyers can sometimes be toxic and extreme. Moreover, jurors tend to denigrate defense

8

lawyers ("I don't know how they can do that job" or "Someone's got to do it") and venerate prosecutors ("They protect the people" "The good guys").  While none of this is universally so, there is enough anti-lawyer bias out there – especially anti-*defense* lawyer bias – that inquiry should be made.  Mr. Barnes had proposed one or two simple open-ended questions on the questionnaire, but those were removed.  He now proposes that those questions be posed to jurors during their individual *voir dire,* as follows:

> What is your opinion of lawyers?  What is your opinion of lawyers who prosecute criminal cases?  What is your opinion of lawyers who defend criminal cases?

### D.     The presumption of innocence

Several jurors have volunteered answers on the questionnaire to the effect that they believe Mr. Barnes is guilty.  There was, however, no question on the questionnaire that asked that question in a direct way and nothing on the questionnaire that assured Mr. Barnes that the jury would accord him the presumption of innocence.  Questions proposed by Mr. Barnes on those issues were deleted from the proposed questionnaire.  Mr. Barnes requests that the Court inquire of jurors, during *voir dire*, as follows:

> Mr. Barnes, the man on trial, is presumed innocent and cannot be convicted unless the jury, unanimously and based solely on the evidence presented in court, decides that guilt has been proven beyond a reasonable doubt.  The burden of proving guilt beyond a reasonable doubt rests entirely with the government.  The defendant is not required to prove his innocence.  Do you agree or disagree with this rule of law?
>
> As you sit here today, do you have an opinion about whether the defendant is guilty of the crimes charged?

9

Failing to inquire on this issue runs the risk that jurors may be selected who do not accept the most fundamental premises of American criminal law.

## CONCLUSION

For the reasons set forth above, the supplemental procedures proposed in this memorandum should be followed.

Respectfully submitted,

JOSHUA L. DRATEL, ESQUIRE
DAVID A. RUHNKE, ESQUIRE
Co-counsel to Khalid Barnes

By:   /s/ David A. Ruhnke
      DAVID A. RUHNKE

Filed via ECF:   White Plains, New York
      February 6, 2008

## CERTIFICATE OF SERVICE

The undersigned counsel to Khalid Barnes hereby certifies that, on this date, this motion was served and filed on all parties via ECF.

/s/ David A. Ruhnke
DAVID A. RUHNKE
Attorney for Khalid Barnes

Dated:   White Plains, New York
      February 6, 2008

## David A. Ruhnke

| | |
|---|---|
| **From:** | "David A. Ruhnke" <davidruhnke@ruhnkeandbarrett.com> |
| **To:** | <Joanna_D'Avella@nysd.uscourts.gov> |
| **Cc:** | "Harbach, David (USANYS)" <David.Harbach@usdoj.gov>; "Dember, Andrew (USANYS)" <Andrew.Dember@usdoj.gov>; "Nelson Lassalle" <pilassalle@verizon.net>; "Jim Dowd" <is2000jbd@aol.com>; "Hanna Antonsson" <hannaantonsson@earthlink.net>; "Erik Levin" <elevin@joshuadratel.com>; "David A. Ruhnke" <davidruhnke@ruhnkeandbarrett.com>; "Alex Eisemann" <aee@eisemannlaw.com>; "Joshua Dratel" <jdratel@joshuadratel.com> |
| **Sent:** | Friday, January 25, 2008 2:00 PM |
| **Subject:** | Questionnaire |

```
Ms. D'Avella--

Re the questionnaire

1.   At question 38 there is a reference to "the defendants" that
should be revised to reflect the fact that the other defendants have
been severed out of the case.

2.   I have received the government's comments and request that the
court maintain its position on the alternative sentence to death.

3.   The same is true with regard to question 59.

4.   In the initial proposed questionnaire, the defense had
suggested a question regarding the credibility of law enforcement
witnesses at question 40:
```

As a general proposition, do you tend to believe that a member of law enforcement, such as a police officer or federal agent, who testifies in court is (check one):

More likely to tell the truth than other witnesses.

About as likely to tell the truth as other witnesses.

Less likely to tell the truth than other witnesses.

```
It is requested that the question be included.



5.   In the initial proposed questionnaire, at question 61-63
regarding attitude towards lawyers.  We request that those be
included:
```

      What is your opinion of lawyers?

      What is your opinion of lawyers who prosecute criminal cases?

2/6/2008

ATTACHMENT A-1

What is your opinion of lawyers who defend criminal cases?

6.   There are no questions relating to race on the proposed questionnaire. We had asked several race-related questions at 71-73 and ask that they be included.

Would the fact that the defendants are African-American cause you to doubt your ability to serve fairly in this case?

>   YES NO
>
>   Do you believe that African-Americans are more likely to be involved in criminal activity, including drug-dealing, than other racial groups.
>
>   YES NO
>
>   Is your neighborhood pretty much made up of all one racial group?
>
>   YES NO
>
>   If yes, what is the predominant group?

If no, what is the approximate racial make-up of your neighborhood?

>   Have you ever had an unpleasant encounter with someone from a racial group different from your own?
>
>   YES NO If yes, please explain:

```
Contact information:
David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, NJ 07042
973-744-1000
973-746-1490 (fax)
E-mail: davidruhnke@ruhnkeandbarrett.com (or)
          dr@ruhnkeandbarrett.com
```

PLEASE NOTE:  This message is from a law firm and may be privileged and confidential.  If you are not the intended recipient, please delete the message.  We'd also appreciate an e-mail back advising us that the message went astray. Thank you.

ATTACHMENT A-2

SUPPLEMENTAL QUESTIONNAIRE
UNITED STATES v. KHALID BARNES

Prospective jurors:  Please complete the following supplemental questionnaire prior to any further questioning. As with the initial questionnaire, you are sworn to give truthful answers.

1. Would the fact that the defendant is African-American cause you to doubt your ability to serve fairly in this case?

   ❏ YES    ❏ NO

2. Do you believe that African-Americans are more likely to be involved in criminal activity, including drug-dealing, than other racial groups?

   ❏ YES    ❏ NO

3. Is your neighborhood pretty much made up of all one racial group?

   ❏ YES    ❏ NO

   If yes, what is the predominant group?  _____

   If no, what is the approximate racial make-up of your neighborhood?
   _____

4. Have you ever had an unpleasant encounter with someone from a racial group different from your own?

   ❏ YES    ❏ NO    If yes, please explain:
   _____

   I HEREBY DECLARE UNDER PENALTIES OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT:

   _____          _____
   (SIGNATURE)                                (JUROR NUMBER)

   _____
   (PRINT YOUR NAME)

# ATTACHMENT B